**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| JARON W. EVANS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASHTRUE, Commissioner )<br>of Social Security, )<br>)<br>Defendant. )<br>_____) | C.A. No.: 0:08-1772-PMD-PJG<br><br>**ORDER** |

Plaintiff Jaron W. Evans ("Claimant") brought this action, pursuant to 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Social Security Commissioner denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), recommending this court affirm the decision of the Commissioner.

**BACKGROUND**

Claimant did not make any specific objections to the Magistrate Judge's presentation of Claimant's administrative proceedings; therefore, the court adopts them for purposes of framing the background of this case. The court discusses any specific references to medical records made by Claimant in his Objections to the R&R in its analysis below.

**A.  Administrative Proceedings**

Claimant applied for DIB on September 19, 2005, alleging that he became unable to work on February 8, 2003. Claimant, 50-years-old at the time he allegedly became disabled and 53-years-old at the time of the administrative law judge's ("ALJ") decision, has a high school

education, two years of a college education, and vocational training as a machinist. He is able to communicate in English and has had past work experience as a farm hand, carpenter, and a metal fabricator. He alleges disability since February 8, 2003 due to degenerative hip and joint disease and Perthes syndrome. After the Social Security Administration ("SSA") denied Claimant's application upon initial review and upon reconsideration, he requested a hearing before an ALJ. After a hearing on June 26, 2006, the ALJ denied benefits in a decision dated November 29, 2006, finding that:

1. The claimant last met the insured status requirements of the Social Security Act December 31, 2004.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of February 8, 2003 through his date last insured of December 31, 2004 (20 CFR 404.1520(b), 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease and Perthes disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to: sit, stand and walk each for 6 hours of an 8-hour day; frequently lift/carry 10 pounds; occasionally lift 20 pounds; and occasionally stoop and squat. He would also require a sit/stand option at will.

6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on January 22, 1953 and was 51 years old on the date last insured, which is defined as an individual closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date[] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time from [February 8, 2003], the alleged onset date, through December 31, 2004, the date last insured (20 CFR 404.1520(g)).

On April 10, 2008, the Appeals Council denied Claimant's request for review, making the ALJ's decision the Commissioner's final decision in this matter. Claimant filed suit in this court, and the Magistrate Judge issued an R&R that recommended the Commissioner's final decision be affirmed. Claimant filed timely objections.

**B.** **Testimony at the June 26, 2006 Hearing Before the ALJ**

Claimant testified that he has been unable to work since February, 2003. Claimant was under the care of Dr. Strohmeyer who recommended a surgical hip replacement to treat Claimant's hip problems. Claimant did not have the necessary funding to pay for such an operation, nor did he have Medicare, Medicaid, or insurance. He testified that the hip replacement was recommended because he had Perthes disease, which had completely deteriorated his left hip socket. Claimant did not have the hip replacement surgery between 2003 and the date of the hearing. He testified that his condition affects his back and balance because his hip is out of alignment and that he uses a cane and a shoe lift to compensate for one leg being

an inch shorter than the other. Claimant testified that his condition got progressively worse between May 2003 and December 2004 which has limited his ability to stand, walk, and sit. He testified that he can stand for an hour at a time and at most two to three hours a day. Claimant could walk only a hundred yards before he would begin to "hurt real bad" and has taken medication to help with this problem. He also testified that he can only sit on one side of his buttocks for ten minutes before having to shift to the other side. He testified that his wife does most of the driving for him and that he is unable to do any of the work he could do before because it is "too physical."

## STANDARD OF REVIEW

### A. Magistrate Judge's Report and Recommendation

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is accepted as an agreement with the conclusions of the Magistrate Judge. *See Thomas v. Arn*, 474 U.S. 140 (1985).

### B. Judicial Review Under Social Security Act

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Although this court may review parts of the Magistrate Judge's R&R *de novo*, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> 'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (alteration in original)).

## ANALYSIS OF CLAIMANT'S OBJECTIONS

Claimant does not make any specific objections to the Magistrate Judge's R&R; rather, he again argues that the ALJ erred in failing to afford great weight to Claimant's testimony about the pain he experiences. The threshold question in determining whether a person is disabled by pain is whether the claimant has "demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain" alleged. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ determined that "the claimant's medically determinable impairments could

5

have been reasonably expected to produce the alleged symptoms," (Tr. 16), and as the Magistrate Judge noted, it is uncontested that Claimant satisfied this threshold inquiry.

After a claimant has met this threshold obligation, "the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work, must be evaluated." *Craig*, 76 F.3d at 595. In making this evaluation, the ALJ opined:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The record reveals minimal evidence from the claimant's alleged onset date through his date last insured. Specifically, the record only documents one visit to Dr. Strohmeyer during the relevant period. This treatment note from May 2003 reported that the claimant was doing fine. Dr. Strohmeyer noted that the claimant's left hip was going to be replaced, but he specifically stated that the claimant could continue with his left hip "as he is doing until he cannot take it anymore and then it would be time to go ahead and replace his hip." Neurologically the claimant was doing great and his strength was noted to have returned significantly well. Strength was noted to be excellent in the claimant's upper and lower extremities. X-rays revealed pseudoarthrosis at 5-6, but otherwise looked good. Dr. Strohmeyer advised the claimant to return in 3-4 months.

(Tr. 16–17.) The Magistrate Judge found that the ALJ conducted a proper analysis in concluding that Claimant's subjective complaints of pain were not entirely credible, and Claimant objects to this recommendation.

In his Objections, Claimant contends that objective medical evidence exists in the record to support his claims of intensity and persistency of pain. He directs the court's attention to a November 11, 2002 medical note of Dr. Strohmeyer, which reflects that Claimant complained of neck, back, and hip pain at that time. (Objections at 3.) Claimant also argues that a December 16,

6

2002 medical note of Dr. Strohmeyer reflects that Claimant complained of experiencing pain in his right buttock, as well as down his right side from his hip to his right knee. (*Id.*) Claimant asserts that he was prescribed Darvocet for pain on February 4, 2003, February 28, 2003, and May 5, 2003. (*Id.*) Claimant also directs the court's attention to his testimony at the hearing before the ALJ, in which he testified that, although Dr. Strohmeyer thinks Claimant needs a hip replacement, he is unable to afford it. (*Id.*) Claimant also testified that he experiences problems with this back and balance because his hip is out of alignment; that he has to wear a shoe lift for his left foot because that leg is shorter than the right; and that because of his alleged disability, he is limited in his ability to walk, stand, and sit. (*Id.*) Based on this evidence, Claimant objects to the ALJ's finding that his complaints of pain are not entirely credible.

The ALJ is required to consider "the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7P. The credibility determination must be "clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro v. Apfel*, 270 F.3d at 176 (4th Cir. 2001) (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency). Claimant correctly argues that subjective evidence as to the intensity or degree of pain need not be corroborated by objective evidence in order to support a finding of disability, but "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to

the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).

In his decision, the ALJ discussed Claimant's testimony, as well as the medical and non-medical evidence in the record. The ALJ considered Claimant's testimony that he was unable to afford a recommended hip replacement, as well as his testimony about the limitations on sitting, standing, and walking imposed on Claimant by his condition. (Tr. 16). The ALJ primarily focused on the fact that "[t]he record reveals minimal evidence from the claimant's alleged onset date through his date last insured. Specifically, the record only documents one visit to Dr. Strohmeyer, Claimant's treating orthopaedic surgeon, during the relevant period. The treatment note from this May 2003 visit stated that the claimant was doing fine." (Tr. 147.) In that visit, Dr. Strohmeyer noted that the left hip would need to be replaced, but Claimant could continue with his left hip "as he is doing until he just cannot take it anymore and then it would be time to go ahead and replace his hip." (*Id.*) Dr. Strohmeyer also indicated Claimant's overall strength had returned "significantly well" and was "excellent" in Claimant's upper and lower extremities. (*Id*). Based upon the record and testimony presented, the ALJ concluded:

> Overall, the medical evidence from the relevant period does not reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were actually disabled. Although the claimant testified that Dr. Strohmeyer advised him he needed to have his left hip replaced, the treatment note clarifies that there was no urgency to this recommendation. In fact, Dr. Strohmeyer's note suggests that the claimant was doing well overall. Furthermore, while Dr. Strohmeyer advised the claimant to return for follow-up in 3-4 months, the evidence of record documents that the claimant did not return to Dr. Strohmeyer until May 2006, three years after his last visit.

(*Id*). The ALJ also noted Claimant had a previous claim denied on February 7, 2003, and he

8

accorded great weight to the prior ALJ's findings in that matter. In doing so, the ALJ noted "the paucity of medical evidence which exists for the period from February 8, 2003 through December 31, 2004, Claimant's date last insured, the brief period between the previously adjudicated period and the period addressed in this subsequent claim, and the fact that there is no evidence of record which provides a basis for making a different finding with respect to the period being adjudicated." (Tr. 17.)

After considering Claimant's Objections, the court finds that substantial evidence supports the ALJ's conclusion that Claimant's complaints regarding his pain are inconsistent with the record. Although objective medical evidence of pain is not required, as discussed above, the objective medical evidence that is available contradicts Claimant's subjective statements about his pain. From Claimant's onset date of February 8, 2003 to the date last insured of December 31, 2004, Claimant only had one examination which took place on May 19, 2003. The attending physician noted that it was an "unremarkable" exam and that overall Claimant was "doing fine." Claimant did not return to Dr. Strohmeyer for three years, despite being asked to return three to four months later. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the lack of ongoing medical treatment is a valid reason for discrediting claimant's pain allegations). However, it is not this court's duty to evaluate the evidence, but merely to determine if the ALJ's conclusions were supported by substantial evidence. Here, the ALJ has analyzed all evidence and has sufficiently explained the weight given to it. The ALJ was not required, as Claimant contends, to give "great weight" to Claimant's testimony, but was required to incorporate the testimony in a credibility analysis which was done. In this case, this court finds that there was substantial evidence in the record to support the ALJ's determination that

Claimant's testimony was not credible.

## **CONCLUSION**

It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **AFFIRMED**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**September 8, 2009**
**Charleston, SC**